IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHESTER MITCHELL,

                Plaintiff,

vs.                                                          CIV No. 03-00061 RLP/LCS

MIKE BRISENO,

                Defendant.

## MOTION FOR A NEW TRIAL AS A RESULT OF JUROR MISCONDUCT

Plaintiff Chester Mitchell, by and through his attorney, Joe M. Romero, Jr., hereby moves this Court to hold an evidentiary hearing to determine the facts and circumstances surrounding the extrinsic evidence which Plaintiff believes was introduced during jury deliberations and, following that hearing, that this Court order a new trial.

## I. FACTUAL BACKGROUND

Following four days of trial, this case was presented to the jury to determine whether or not Defendant Mike Briseno violated Plaintiff's Fourth Amendment Rights. Before the deliberations began, the Court specifically instructed the jurors to consider only the evidence that was put before them by the parties. Nevertheless, Juror Peter Scaltrito solicited legal opinions from his paralegal brother which he in turn relayed to the jury. Those opinions claimed that the actions of Defendant were lawful and otherwise held that the jury should find for Defendant. Said opinions, which were not subject to cross-examination by the parties or review by the Court, were used to sway a deadlocked jury (the majority of whom favored finding for Plaintiff Mitchell). The introduction of this extrinsic information was unlawful and requires that the Court order a new trial.

## II. LEGAL ANALYSIS

It is axiomatic that that a jury's verdict "must be based upon the evidence developed at the trial." This requirement goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury. <u>Turner v. Louisiana</u>, 379 U.S. 466, 472 (U.S., 1965). The conduct of parties, witnesses and counsel in a case, as well as the conduct of the jurors and officers of the court may be of such a character as not only to defeat the rights of litigants but it may directly affect the administration of public justice. <u>McDonald v. Pless</u>, 238 U.S. 264, 266 (U.S., 1915)(However, no new trial warranted where improper information was intrinsic not extrinsic). A new trial is proper for "any of the reasons for which new trials have heretofore been granted…" See Fed.R.Civ.59(a).

### A. An Evidentiary Hearing is Required

Exceptions to the common-law rule prohibiting the use of juror testimony to impeach a verdict have long been recognized in situations in which an "extraneous influence" was alleged to have affected the jury. <u>Tanner v. United States</u>, 483 U.S. 107, 117 (U.S., 1987)(*citing* <u>Mattox v. United States</u>, 146 U.S. 140, 149 (1892)). In *Mattox*, the Supreme Court held admissible the testimony of jurors describing how they heard and read prejudicial information not admitted into evidence. In fact numerous courts have held that, unless the court is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial, an evidentiary hearing must be held. <u>United States v. Navarro-Garcia</u>, 926 F.2d 818, 822 (9th Cir., 1991).

The Tenth Circuit agrees with this rule. Specifically, "[s]ince a juror may not testify as to how any extraneous material affected his decision, once the introduction of extraneous material has been established, a presumption of prejudice becomes operative which can be overcome by

2

showing that the error was harmless." United States v. Hornung, 848 F.2d 1040, 1045 (10th Cir., 1988)(*citing* 3 J. Weinstein & M. Berger, Weinstein's Evidence para. 606[05] (1987); and United States v. Weiss, 752 F.2d 777, 783 (2d Cir.), *cert. denied*, 474 U.S. 944 (1985); and United States v. Fleming, 594 F.2d 598, 608 (7th Cir.), *cert. denied*, 442 U.S. 931 (1979). When a trial court is apprised of the fact that an extrinsic influence may have tainted the trial, the proper remedy is a hearing to determine the circumstances of the improper contact and the extent of the prejudice, if any, to the defendant. Hornung, Id.; see also Remmer v. United States, 347 U.S. at 229-30.

The Court's questioning of a juror who received extraneous information is limited to the circumstances and nature of the improper contact, as Fed.R.Evid. 606(b) precludes the court from delving into the subjective effect of the contact on the juror's decision-making. Therefore, an objective test must be applied assessing whether a party was prejudiced by the extraneous information. Hornung, Id.; see also United States v. Bruscino, 687 F.2d 938, 940-41 (7th Cir. 1982) (en banc), *cert. denied*, 459 U.S. 1228 (1983); Miller v. United States, 403 F.2d 77, 83 n.11 (2d Cir. 1968); 3 J. Weinstein & M. Berger, Weinstein's Evidence para. 606[05] (1987).

The court should therefore "assess the 'possibility of prejudice' by reviewing the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware." Hornung, Id.(*citing* United States v. Weiss, 752 F.2d 777, 783 (2d Cir.), *cert. denied*, 474 U.S. 944 (1985). For example, extrinsic evidence in the form of a conversation that one juror had with a banker concerning the defendant, which that juror repeated to the other jurors, raised a presumption of prejudice which the opposing party was required to overcome. Hornung, Id.

3

*B. The Factors to Consider Demonstrate that the Verdict is Invalid*

In deciding whether outside information substantially influenced a jury's verdict (thereby prejudicing the litigant), courts cannot delve directly into jurors' mental processes. <u>Mayhue v. St. Francis Hosp. of Wichita, Inc</u>., 969 F.2d 919, 923 (10th Cir. 1992); Hornung, 848 F.2d at 1045 (10th Cir. 1988); Fed.R.Evid. 606(b). Pursuant to the Tenth Circuit's holding in *Vigil v. Zavaras*, 298 F.3d 935, 941 (10th Cir., 2002), this Court should consider a number of factors in ruling on Plaintiff's request for a new trial, including:

1) the degree to which the jury discussed and considered the extrinsic information,

2) the extent to which the jury had difficulty reaching a verdict prior to receiving the improper evidence,

3) the degree to which the information related to a material fact in the case,

4) when the jury received the extrinsic evidence,

5) the strength of the legitimate evidence, and

6) whether the extrinsic evidence merely duplicates evidence properly before the jury.

In this case the majority of the listed considerations are anticipated to support Plaintiff's request for a new trial. See <u>Exhibit A: Affidavit of Juror Jim Dennison</u>.[1] The information at issue, to wit: legal and evidentiary analysis and opinions obtained by Juror Peter Scaltrito from his paralegal brother, which opinions and statements Juror Scaltrito then relayed to the rest of the jury as proof that Defendant's conduct was lawful, was discussed at length. In fact, that information was the reason the majority of the jury was swayed to find for Defendant. This fact is combined with the well-known difficulty that this jury had in reaching a verdict. A majority of

---

[1] Exhibit A, filed concurrently with Plaintiff's Motion, has been reviewed by affiant, Jim Dennison. However, Mr. Dennison was unable to sign the affidavit at the time that this motion was filed. Once Mr. Dennison has executed his affidavit, the original will be filed in Court.

the jurors supported Plaintiff's case. Two jurors sought to do whatever necessary to coerce the majority of the jury into finding for Defendant Briseno. Although one juror, J. J. Maier, was apparently only using intrinsic evidence in support of those efforts, the decision by the second juror to solicit outside information and present that information to the juror was clearly improper. It was discussed at length and affected the jurors' final decision.

It is further anticipated, both from interviewing Jim Dennison as well as the informal discussions with the jury that the Court permitted after the verdict was returned, that testimony in the matter will show that the jury was deadlocked immediately. Upon information and belief, that deadlock was largely due to Juror Peter Scaltrito's announcement at the outset of deliberations that he would not, under any circumstances, find against Defendant. Consequently, the extrinsic information offered by Juror Peter Scaltrito was put forth after the jury was immotile. Finally, the information put forth did not merely duplicate evidence put forth in Defendant's case-in-chief.

*C. Additional Evidentiary Material is Available to the Court and Parties*

Throughout the trial and the deliberations, the jurors were allowed to take notes on notepads provided by the Court. Those notepads generally, and the notepad kept by Juror Peter Scaltrito in particular, may contain evidence regarding the improper extrinsic evidence offered to the jury by Juror Scaltrito. Plaintiff requests that those notebooks be released to the parties so that they may adequately prepare for the required evidentiary hearing.

### III. Conclusion

The facts in support of Plaintiff's request for a new trial are clear: impermissible extrinsic information was introduced to the jury after it was deadlocked and that impermissible evidence swayed the jury's result. The jury in this case did not render a fair and lawful decision based

upon the facts and arguments put forth by the parties. Following the evidentiary hearing on this matter, the Court should order a new trial as a result of Juror Peter Scaltrito's deliberate misconduct.

>Respectfully Submitted,
>
>**(ELECTRONICALLY FILED)**
>
>By: _____
>Joe M. Romero, Jr.
>Attorney for Plaintiff Mitchell
>1905 Lomas Blvd. NW
>Albuquerque, NM 87104
>(505) 843-9776

I hereby certify that a true and correct copy of the foregoing pleading was mailed to the following individuals on Tuesday, December 28, 2004:

Gregory V. Pelton
Pelton & Associates, PA,
Attorney for Defendant Briseno
4300 Carlisle, NE, #4
Albuquerque, NM 87107

**(ELECTRONICALLY FILED)**
_____
Joe M. Romero, Jr.